We are now going to move to appeals numbered 23-3388 and 23-3110, Patrice Daniels et al. v. Eddie Jones et al. We are going to begin with oral argument on behalf of the appellant. Mr. Hirschman will recognize you. Thank you, Your Honor. Harold Hirschman on behalf of the appellant. The district court ruling that it suddenly lost jurisdiction while the parties were preparing for trial has no legal basis. None has been cited by the appellees. None was cited by the trial judge. Indeed, remarkably, the trial judge at A-16 actually said any right to return the matter to the trial docket survived only as long as the consent decree did. It is undisputed fact here that it was returned to the trial docket on July 21. The consent decree, by everyone's count, ended on July 22. What do you say, returned to the trial docket the day before the consent decree ended? What do you mean? Literally, the judge's order says, I hereby return this case to the trial docket. That appears at A-36. Your argument presumes that the consent decree date would not have effect because of the case being on the trial docket. Is that correct? Correct. Why wouldn't the consent decree date have effect, notwithstanding the presence or absence of the case on the trial docket? If I understand your Honor's question correctly, what that means literally is the consent decree is over. It doesn't impact the next set of proceedings. It isn't that we can go back and say, oh, you promised us X or Y or Z in the consent decree. That's why the issue, remember, this is a jurisdictional issue that Judge Mims says he was relying on. That's part of the problem. The nomenclature here is not consistent because we've got cases that use mootness. Some say case in controversy. Some say jurisdiction. What those cases do seem to have in common, though, Mr. Hirschman, is this idea that once the consent decree ends, that ends the case. I understand how you'd be troubled with the language Judge Mims would have used, but can you address this idea that the consent decree isn't ended by its own terms? Because if you look at 821, which is what the parties told the court in June, the parties said, we have a dispute. We have a problem. The consent decree has not solved the problem. The consent decree has not been complied with, as this court acknowledged in its rational opinion. And so where do we go from there? Mr. Hirschman. I'm sorry. I'm sorry. What was left of the case once the second settlement agreement or consent decree expired on July 22nd? The only outstanding violations, weren't they resolved by the decision in Rasho, which said that there was no ongoing Eighth Amendment violation as to the areas that were addressed in the permanent injunction? There are two parts to my answer to that. First is there were 42 items under the consent decree which had never been resolved and which the Rasho court recognized were not in front of them. That's one. Two is that the Rasho court was applying the law to a situation which existed in the IDOC two years before the opinion came down. And what they said was, A, that two years before, they believed that there was sufficient diligence to address these issues. Not that they'd been solved, not that they weren't serious, but that the IDOC was working on it. That says nothing about the future. That isn't a get a jail-free card forever with respect to the failure to have enough staff or the failure to deal with people in crisis. That would turn the whole law on its head because it would suggest, as the courts have said repeatedly, if you are walking down a path which ultimately fails, we can look at that and we can decide whether it was reasonable for you to continue down that path. So with respect to the decision of the Rasho court, it was twofold. At the time it looked, at the time of the trial, it believed there was sufficient effort being made to solve the problem, including, for instance, the hospital. The hospital hadn't opened yet. The hospital didn't have any staff. The last time we looked at the hospital, it had opened, beautiful building, no people in it. 150 beds, maybe 30 beds full. Now, how can it be that building an empty hospital solves the problem of acute care? Judge Hartman, did the settlement agreement resolve all of the claims of the parties up until the filing of the Fourth Amendment complaint? It was supposed to if it was fulfilled, and that's why Judge Mims' order of June, his order approving the settlement, said settlement wouldn't be fair, wouldn't be fair if I wasn't supervising this, if I wasn't available. And the Seventh Circuit picked up that language at page four. Right, it said it's a consent decree, but it was supposed to resolve everything, right? It is supposed to resolve everything if. There was this deadline for the court's jurisdiction of July 22nd, 2022. There was, and that is when the consent decree was supposed to end. And then the next question was for the court, is there anything left? You know, should we continue with this case or not? And the court had already said the day before, we're going to continue with the case. Why? Because he said. Was that just because of the Fourth and Fifth Amendments, the amended complaints that were filed though? Was there anything left of the case up to the point before the Fourth and Fifth Amendments, amended complaints were filed? Yes, there were unresolved issues which the judge acknowledged were not, had not been accomplished by the defendants that they had promised. And they had, there had not been a trial on those, there had not been, but there was an order specifically, and we cited in our brief, I can't remember it off the top of my head, that there were some 40 items that had not been complied with. So the judge knew that. And he knew further that the, what the Seventh Circuit had told him was not dismiss this case, that would have been in the mandate. If the Seventh Circuit believed the case was over, they would. I'm not sure about that, given the limited issue that was before the court. They didn't send anything back. So I don't know that, that would have been an advisory opinion from the court saying the case is over. That's not what the appeal was about. Exactly. Exactly. That wasn't what the case was about. It wasn't whether everything had been complied with. I'm sorry, Your Honors. You can reserve your time. Thank you very much, Mr. Hirshman. Could I just? Sure, Judge Rovner. Were there new claims after the Russia with you? Were there new claims? There was a continuation of the failure of care in a different time frame. Obviously, we couldn't, at the time of the settlement, say we're settling this for all times, it doesn't matter what you do, how miserable the care is. And so that isn't what we did. We settled the third complaint, but the judge said, and the defendants didn't even move to dismiss on jurisdictional grounds when we filed the fourth amended complaint. Why? Because. But there were new claims in the fourth amended complaint, correct? There were several new kinds of claims, new, you know, we had equal protection claims which we hadn't had before. We tried to add the governor as a party, but the defendants answered the fourth amended complaint with respect to the prison conditions. And, you know, if you look at Rufo, Rufo is on point that it is not, the trial court has to look at the situation at the end of the consent decree and decide what is just and reasonable. And we say that's exactly what happened. And then. You know, I take your point that the fourth amended complaint brought new claims into the case. But am I wrong if I thought that that complaint was not filed until September 2022, two months after the consent decree expired, which would leave no live case or controversy in those two months? But there was, there's two answers to that. One is we were permitted to file an amended complaint, which is always jurisdictional. That is to say, you can't lose your jurisdiction when you've told the court, when you told the person, a person in our position, that they can file an amended complaint. You can't just pull the rug out and say, whoops, there's no jurisdiction. There was jurisdiction when he told us we could do that. And further, the issues in the third amended complaint and the problem with what was going on at the IEOC had not been completely resolved. And there was no order dismissing the third amended complaint until three years later. So it's impossible to say under any way that we had noticed that the end of the consent decree was the end of the case. That isn't what the judge said then. It isn't what the meaning is of the consent decree. And I know I'm way over time. No, but I, what 40 claims are you talking about? How different are those claims from those that were under review in RASHO? That's, are you saying 42 areas are new, not overlapping with the areas that were addressed by RASHO? Absolutely. I'm saying that, Your Honor. And they were subject to the settlement agreement? They were subject to the settlement agreement. That's how we know that they weren't complied with. There is an order, one of my helpers will give me the order when I get up next and I'll tell it to you. But it is absolutely clear that there were areas that were not covered by the injunction. So you're, if I understand you correctly, you're saying you had a settlement agreement, the court retained jurisdiction because it was overseeing the enforcement of it, but the settlement agreement fell apart because everything wasn't complied with and therefore it wasn't a final order. Correct. It couldn't be. Thank you, Mr. Hirshman. We'll now move to argument on behalf of the appellee, Ms. Hanson. May it please the court, counsel, I'm Assistant Attorney General Christina Hanson on behalf of the defendants, appellees, cross appellants. The district court correctly concluded that this case terminated upon the expiration of the consent decree and thus that any new claims that plaintiffs sought to assert had to be raised in a new lawsuit. But it erred when it concluded that the defendants were not entitled to a refund of the $1.9 million deferred fee award that they were ordered to pay upon issuance of the now vacated permanent injunction. What's your position on whether or not all of the terms of the settlement agreement were met as of July 22nd when the court's jurisdiction over the consent decree ended? Putting aside the 4th and 5th Amendment complaint, what is your position on whether or not those terms of the settlement agreement were all complied with as of that July 22nd date? First off, there is no settlement agreement because the prior appeal, the Rosho decision determined that the agreement was a consent decree. Okay, then what's your position on whether or not the terms of the consent decree were satisfied as of July 22nd? As of July 22nd, the court's enforcement authority over the consent decree expired. That's a separate question. Then what is your position on whether or not the terms of the consent decree had been complied with? The terms of the consent decree had been complied with. The consent decree listed a number of that the defendants agreed to undertake, and then there was a mechanism by which the court could enforce those provisions. The plaintiffs filed a permanent injunction seeking to enforce certain provisions or alleging that there was noncompliance with the consent decree, and this court reversed the permanent injunction and held that there were no ongoing, that the issues of noncompliance that they raised did not present an issue of federal rights violation and vacated the permanent injunction. From there, plaintiffs filed additional relief in the district court to enforce provisions of the consent decree, but those efforts were denied. The court did not find any ongoing constitutional violations and denied their motion. The court there, you're talking about the district court? The district court, yes. So to put some timing on this, Rochor decision comes out January 12th of 22, mandate issues a certain number of days later, case goes back before the district court, and you're now indicating district court makes no reference that there's any federal rights violations remaining? For any additional issues that they had raised, if they had raised issues of noncompliance, the district court did not enter any orders finding that there were instances of substantial noncompliance that rose to the level of a constitutional violation, which is what was required under the consent decree. Is that a separate order from Judge Mims somewhere between February and July of 22? Yes, and that addresses their additional issues of noncompliance. You don't happen to have a date or a docket entry or something like that? I'll have to pull that up. How do you explain the July 21st order returning it to the active docket saying that the court has operated as though there's no longer in agreement and returning it to the active docket? That sounds to me like the consent decree has fallen apart, and so we're going to litigate this case. Well, the consent decree was the final judgment in this case, and it encompassed the entire lawsuit. What is that based on, that it was the final judgment? Because the court entered an order at the very beginning on May 23rd and referred to the consent decree as the settlement agreement and said this matter will remain on the court's docket until the terms of the settlement agreement are met. At that time, this matter will be dismissed with prejudice. That's when it becomes a final judgment, when it's dismissed with prejudice, and I am confused by the July 21st order saying we're returning to the active docket. In the interim, the district court entered the permanent injunction, which was appealed to this court in the Rosho decision, and in the Rosho decision, this court determined that the agreement that the parties had entered into was judicially enforceable and was thus a consent decree. The consent decree, by definition, is a final judgment on the merits of the case. What are you relying on for that consent decree being a final judgment in the case? Because the court continued to retain jurisdiction to enforce it, and usually you don't have a final judgment until that jurisdiction is relinquished. Well, under this court's, well, first off, under the Supreme Court's precedent in the Rosho case, the court acknowledged the consent decree is a final judgment that may be reopened only to the extent that equity requires, and this court has also, in the Jonesell versus Burge decision and in Bogart v. Wright, expressed that a consent decree is a final judgment on the merits, and of course, the court retains jurisdiction to enforce its judgment, but in this case, the jurisdiction of the district court to enforce the judgment was circumscribed by the terms of the consent decree. It was limited in scope, and it was limited in duration. The parties had agreed that the consent decree would expire three years after the relevant approval date, and then they had agreed to an extension of that, which gets us to that July 22nd, 2022 date, and so that was the date that the courts, by the terms of the agreement, the court's enforcement jurisdiction ended, and so the case, there was no longer a case or controversy between the parties. I, Mr. Hirschman is saying that 40 areas arose after the Rosho appeal was filed. Can you tell us how those 40 areas were somehow resolved before the court let the consent decree expire? It's so confusing. Well, again, the consent decree was the final judgment in the case, and after this court remanded the case after the permanent injunction, the consent decree was still ongoing. If there were issues of noncompliance that the plaintiffs wanted to raise, they could seek relief in the district court, but when the court's jurisdiction expired on July 22nd, 2022, there were no outstanding motions or requests for relief. There were no outstanding allegations that there were of noncompliance for the court to address, and so the court's jurisdiction ended at that time. At that time, there was no case or controversy between the parties. Not all courts, though, who deal with this situation of a consent decree which is expiring by its own terms and date, not all of them use jurisdictional language. Some call it mootness. Some call it authority or relevant authority. The court lost its authority to handle it, or the matter was moot. When terms like judgment or jurisdiction are used, they're very dedicated meanings under our statutes and our rules, and so I think what we're asking to address, Ms. Hanson, is what happens to the case July 23rd of 2022? Is it moot? Does the court lack authority, or are you saying it's a dismissal with prejudice and a loss of subject matter jurisdiction? It's a dismissal with prejudice and a loss of subject matter jurisdiction, and there was no complaint filed until after that July 22nd date, and so the plaintiffs, to the extent that they have— Don't all the terms of the settlement agreement have to have been met in order for it to be a dismissal with prejudice, as the court said in the May 23rd order? No, because, again, the court's jurisdiction was circumscribed by the agreement. The court's jurisdiction was limited in duration and it was limited in scope. The court could only enforce provisions of the decree to the extent that it found an ongoing federal rights violation and made PLRA findings to that effect, and that did happen. There were no outstanding issues. If there had been an outstanding motion suggesting that there were ongoing violations and asking the court to resolve those through an order under the dispute resolution provisions of the consent decree, that would be a different case. Doesn't returning it to the active docket suggest that there were outstanding issues? Why else would you return it to the active docket? I'm sorry, I didn't mean to speak over you. There were no outstanding requests for relief. The plaintiffs had no outstanding requests for relief that could be addressed under the court's enforcement authority of the settlement agreement. It's just so odd. There's this notice of proposed negotiation plans on June 1st of 2022, which some will argue that's the fact that there's some ongoing discussions going on. It doesn't necessarily precurse other amended complaints, but why doesn't the district court say, I'm denying your fourth amended complaint, your fifth amended complaint because I don't have jurisdiction because consent decree is ended? As the court said, that was a mistake. That is what it should have done, but it made a mistake. But the court's error, the party's failure to raise it couldn't affect the court's jurisdiction here. The negotiation plan was just that. It was a plan of negotiation while the consent decree was still in effect. The parties agreed to negotiate to work towards a new agreement, which they didn't do, and so that left the entire consent decree intact. I see that I'm out of time, but I would also add that for the reasons set forth in our notice, the district court erred in not returning the $1.9 million deferred fee payment. Give me one minute. Judge Rovner, any further questions? Only a thousand. Any that you'd like to pose at this time? I really would like to see Mr. Hirschman again. Very good. Judge Saney? Thank you. Thank you very much, Ms. Hanson. Mr. Hirschman, why don't you come back forward. We'll set three minutes for rebuttal, and then let's hear from Judge Rovner first. Your Honor, could I just read where you can find the areas that were resolved? It's at docket 3263 at 2, Exhibit B, and it's discussed in our brief at page 6. What's the date of that entry, please? That entry is March 8, 2021. That predates the Rosho decision. It predates the Rosho decision, and in the Rosho decision, I can't find the page, but it acknowledges that there are other matters in the district court. So that's point one. Point two, Your Honor pointed to 3580 or 821, the proposed plan of negotiation, and it acknowledges that there are issues about compliance, and then it goes on to say, if we're unable to reach an agreement to resolve those disputes, and this is a court order acknowledging that there are disputes, the parties agree that the matter will be returned to the active trial docket and proposed subject to the approval that we'll file an amended complaint. So Judge Mim enters an order, Judge Mim follows the order, we follow the order, and now we're told, oh, actually, the case was dismissed with prejudice, and if it had been dismissed with prejudice, obviously, we would have had appeal rights, and instead, we're told two years later, after we're just about to finish discovery and go to trial to address the suffering that we think is happening, and we're told, oops, you know, two years ago, I made a mistake. That isn't, he didn't make a mistake. If the parties were engaged in these negotiations that you're describing, and I have no doubt they were, why not just revise the consent decree and try to get approval from the court? Because that had been done previously in the case. It had been done previously. The letter we received, which is in our brief on the 23rd, we said, we had told them that he might not have, he might not be able to enforce it himself after this court's order, but it still existed. They said, oh, no, no, no, no. We're going to litigate this case, and that's why there was no ability to resolve the issues. We tried. We tried. What about the state's point that there was no pending request for the court to resolve the 40 areas of noncompliance? We had requested that they resolve the 40 areas of noncompliance. What effectively that means is we had to have a motion pending, and it wouldn't have made any difference because the consent decree was over. So the point is that the areas where there wasn't compliance, the court had determined there was, there wasn't compliance, and there was no time, literally, to effect compliance in the one day or the, you know, actually the mandate of this court came down May 22nd. So we tried to do that, and we failed. And so then the question becomes, are we nowhere? Are we losing our class? Are we losing our ability to move the case forward? And do we then have to file a new case, pay $455 in order to then be faced with, oh, you don't have a class. You don't have a viable complaint. You can't use any of the evidence because it was all for the original case. Who knows what, and who knows how long it would take. If this court please sends us back, we can have this case on trial in a year, a year and a half, and we'll know whether they are complying with the Constitution. This isn't just, this is their duty to provide mental health care, and nobody, nobody has testified that they are actually providing mental health care. This court said, we think they're on their way. We think they're not, but nobody, the trial judge or us or the defendants. Thank you, Mr. Hirschman. Thank you. Thank you. Anything further, Judge Rovner? No, but thank you very much. Thank you very much, Mr. Hirschman. Thank you very much, Ms. Hanson. The case will be taken under advisement.